United States District Court
Southern District of Texas
**ENTERED**
November 03, 2020
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SONJA L. REESE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:19-CV-2787** |
| | § | |
| **ANDREW SAUL,** *Commissioner of Social Security Administration*, | § § § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Sonja L. Reese ("Plaintiff") filed this suit against Defendant Andrew Saul ("Commissioner") seeking review of the denial of supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A). (Dkt. No. 1.) Pending before the Court[1] are the parties' cross-motions for summary judgment. (Dkt. Nos. 10, 11.) Based on the briefing, record, and relevant law, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **GRANTED**, Commissioner's Motion for Summary Judgment be **DENIED**, and the case be **REMANDED** for further proceedings.

**I.    BACKGROUND**

Plaintiff is a 41-year-old woman who uses a cane or wheelchair due to chronic pain in her right knee and lower back, with resulting nerve damage and loss of feeling in her feet. (R. at 57, 278-279.)[2] On March 22, 2016, Plaintiff filed an application under Title XVI of the Social Security

---

[1] On July 24, 2020, the District Judge referred the entire case to the Magistrate Judge for full pretrial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 9.)

[2] The Administrative Record in this case can be found at Dkt. No. 7.

Act, seeking benefits beginning on February 1, 2015 based on arthritis in her knee and neck, broken vertebra in her spine, depression, and dyslexia. (R. at 57-58.) The Social Security Administration denied Plaintiff's claims initially on July 19, 2016 and again upon reconsideration on November 2, 2016. (R. at 86, 94.) On November 14, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 97.) ALJ Gerald L. Meyer set the hearing for May 16, 2017, but postponed it so Plaintiff could obtain counsel. (R. at 27-34.) Plaintiff did so, and the full hearing was held on October 17, 2017. (R. at 35-55.) Plaintiff and her mother both testified at the hearing. (R. at 38-52.) Susan Rapant, a vocational expert ("VE"), also testified. (R. at 52-54.)

On April 16, 2018, the ALJ denied Plaintiff's application for benefits, finding Plaintiff not disabled at Step Five of the evaluation process. (R. at 10-21.)[3] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 22, 2016. (R. at 12.) At Step Two, the ALJ found Plaintiff has the following medically determinable and severe impairments: osteoarthritis, degenerative disc disease, affective disorder, and obesity. (R. at 12.) At Step Three, the ALJ found Plaintiff's impairments or combination of impairments do not rise to the level of severity of impairments in the listings associated with disorders of the spine (Listing 1.04) or affective disorders (Listing 12.04). (R. at 12-14.) The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform limited sedentary work, as described below. (R. at 14.) At Step Four, the ALJ found Plaintiff has no past relevant work. (R. at 19.) At Step Five, the ALJ

---

[3] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform—such as optical goods worker, final assembler, and sorter—and therefore, Plaintiff is not disabled as defined under the Social Security Act. (R. at 20-21.)

Plaintiff appealed the ALJ's decision to the Appeals Council on May 21, 2018. (R. at 216.) On May 29, 2019, the Appeals Council denied Plaintiff's request for review. (R. at 1-4.) The ALJ's decision, therefore, represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if . . . the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision."). On July 29, 2019, Plaintiff filed this civil action under 42 U.S.C. § 405(g). (Dkt. No. 1.) In the appeal, Plaintiff argues the ALJ erred by failing to incorporate the use of a wheelchair into the RFC and therefore the decision is not based on substantial evidence. (Dkt. No. 10.)

## II.     STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner on a social security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Our review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings

of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822-23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. The court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

Summary judgment in social security cases, like others, is governed by Federal Rule of Civil Procedure 56. *See Temple v. Saul*, No. 19-CV-3320, 2020 WL 6075644, at *2 (S.D. Tex. Oct. 14, 2020). Under Rule 56, summary judgment is proper when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When parties file cross-motions for summary judgment, [courts] review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quotations omitted).[4]

---

[4] Parties in this case were given the opportunity to file response and reply briefs to each other's summary judgment motions. (Dkt. No. 8.) Commissioner filed a response and Plaintiff did not. Both parties represented to the Court that they did not intend to file reply briefs.

### III. THE CASE SHOULD BE REMANDED BASED ON FACTUAL ERRORS THAT WERE CENTRAL TO THE RFC ANALYSIS.

Plaintiff argues the ALJ erred in his RFC analysis because he disregarded evidence that Plaintiff needed a wheelchair and misconceived two important pieces of medical record evidence. (Dkt. No. 10 at 5-10.) First, according to Plaintiff, the ALJ incorrectly stated that the medical records do not reflect that Plaintiff was prescribed a wheelchair. (*Id.* at 10.) Second, the ALJ incorrectly stated that Plaintiff was able to move from her wheelchair to an examination table without difficulty, when, in fact, Plaintiff was able to move *from the examination table to her wheelchair* without difficulty. (*Id.* at 9-10.) As a result, Plaintiff contends that the ALJ's RFC finding and the hypotheticals posed to the VE did not incorporate all of her limitations, and the decision denying her benefits is not based on substantial evidence. (*Id.* at 10-14.)

Commissioner does not address the particular errors identified by Plaintiff. Instead, Commissioner argues Plaintiff's subjective complaints of disabling symptoms are unsubstantiated by the record, particularly by unremarkable physical examinations, notes indicating Plaintiff could move from the examination table to her wheelchair without difficulty, and a report that Plaintiff's pain was alleviated by medication. (Dkt. No. 11 at 6-11.) According to Commissioner, the ALJ was not bound by Plaintiff's *choice* to use a wheelchair in making his RFC determination, as the ALJ is free to weigh the evidence and "incorporate only those limitations he finds consistent with the record." (Dkt. No. 12 at 2-3.) Moreover, Commissioner argues Plaintiff has failed to show she is unable to perform the sedentary jobs identified by the VE, as those particular jobs may actually require very little walking. (*Id.* at 4-5.)

The Court finds that, although objective medical evidence as to Plaintiff's inability to ambulate without a wheelchair is not overwhelming in this case, the ALJ's mistakes regarding

Plaintiff's wheelchair prescription and wheelchair use lie at the heart of her disability claims and, therefore, remand is appropriate.

### A. The ALJ Based The RFC Analysis On Factual Mistakes Related To Plaintiff's Prescription For A Wheelchair And Ability To Ambulate Without It.

Before reaching Step Four of the evaluation process, the ALJ must determine a claimant's RFC. 20 C.F.R. § 404.1520(a)(4). RFC is a "determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)); *accord Darrion B. v. Berryhill*, No. 17-CV-2866, 2019 WL 1077333, at *8 (N.D. Tex. Mar. 6, 2019). The ALJ, as factfinder, must "weigh the evidence and . . . incorporate limitations into the RFC assessment that [are] most supported by the record." *Majkut v. Astrue*, No. 08-CV-92, 2009 WL 3110210, at *8 (N.D. Tex. Sept. 28, 2009) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)).[5] "The claimant's RFC is used at both steps four and five of the sequential analysis: at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step to determine whether the claimant can adjust to any other type of work." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ determined Plaintiff can perform sedentary work with certain modifications. (R. at 14.)[6] According to the ALJ, Plaintiff can stand or walk for two hours and sit for six hours in an eight-hour workday. (R. at 14.) Plaintiff must be able to use a cane to ambulate, but can

---

[5] "[T]he determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor*, 706 F.3d at 602-03; *accord Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a). "Occasionally" is defined as "very little [to] up to one-third of the time." SSR 83-10, 1983 WL 31251, at *6.

occasionally stoop, kneel, and crouch and occasionally lift or carry ten pounds. (R. at 14.) However, Plaintiff can never crawl, climb ropes, ladders, or scaffolds, work at unprotected heights or around dangerous machinery, or tolerate exposure to extreme temperatures. (R. at 14.) Plaintiff can understand, remember, and carry out detailed but not complex instructions. (R. at 14.)

In explaining the RFC finding, the ALJ summarized Plaintiff's medical records—particularly those from Lone Star Family Health Center and Squatty-Lyons Clinic relating to Plaintiff's chronic joint pain—and testimony from Plaintiff and her mother at the administrative hearing. The ALJ then provided the following relevant analysis:

> As for opinion evidence, no treating or examining physician has opined that the claimant cannot work. While the treatment record noted the use of a cane or wheelchair intermittently throughout, there was no indication an assistive device was recommended or prescribed by a physician. In fact, there was an observation, which indicated the claimant did not require an assistive device to move onto the examination table. The claimant's allegations of the intensity and persistence of pain and disabling symptoms are not consistent with medical record signs, laboratory findings, or the medical record as a whole. Most notably, the examinations were often unremarkable. However, when there were objective findings on examination they were mild to moderate in nature. The claimant's testimony of experiencing disabling pain and limitations is not corroborated in the overall record. The subjective reports to her physicians are inconsistent with the hearing testimony regarding functional deficits. For instance, the claimant reported her pain was greatly reduced to 2/10 with medications. The undersigned considered but granted little probative weight to the claimant's testimony.

(R. at 19 (citations omitted).) In other words, Plaintiff's wheelchair use, prescription, and related medical records were a key component in the ALJ's RFC finding and apparently impacted the credibility he gave to Plaintiff's subjective complaints.

However, the ALJ's statement that "there was no indication an assistive device was recommended or prescribed by a physician" is incorrect. On March 20, 2017, Plaintiff saw Dr. Carolyn Emerick ("Dr. Emerick") at Lone Star Family Health Center in order to obtain a prescription so she could use a wheelchair in a courthouse. (R. at 415.) Plaintiff had already been

using a wheelchair instead of walking more than a few yards outside her house or standing for long periods of time due to her history of "low back pain with spondylolisthesis resulting in bilateral lower extremity neuropathy (unable to feel plantar surface of feet bilaterally) and frequent falls." (R. at 415.) Dr. Emerick prescribed her a wheelchair that day. (R. at 416 ("Started Wheelchair, 1 (one) Misc as needed, 1 Unspecified, 3/20/2017, No Refill. Local Order: One Wheelchair. Patient should be allowed to use wheelchair as needed, including in government offices.").)[7] The subsequent medical records are replete with references to this prescription.[8] Commissioner fails to address this mistake, even though it is a central component of Plaintiff's argument on appeal. In fact, Commissioner repeats the ALJ's statement as if it were correct. (*See* Dkt. No. 11 at 8.)[9]

The ALJ was also incorrect in stating that treatment notes show Plaintiff "did not require an assistive device to move onto the examination table." (R. at 19; *see also* R. at 17 ("On June 29, 2017, . . . [i]t was noted [Plaintiff] moved from the wheelchair to the examination table without difficulty.").) In actuality, the medical records state Plaintiff moved from the examination table to her wheelchair without difficulty. (R. at 481.) Commissioner again fails to recognize the ALJ made

---

[7] *See also* R. at 416 ("Chronic low back pain with associated leg weakness and increased risk for falls. Rx given for wheelchair so that patient may use wheelchair in courthouse. Patient already has wheelchair and is not needing new equipment at this time.").

[8] R. at 413 (3/22/2017) (repeating wheelchair prescription in "medication history"); R. at 411 (5/1/2017) (same); R. at 498 (8/3/2017) (same); R. at 492 (10/2/2017) (same).

[9] In summarizing Plaintiff's medical records, the ALJ did state that "as of March 20, 2017, a physician with Lone Star Family Health Center noted [Plaintiff] should be allowed to use a wheelchair as needed" and cited to a different appointment with Dr. Emerick on October 2, 2017. (R. at 16.) The ALJ did not recognize that Dr. Emerick had actually *prescribed* a wheelchair. Likewise, in summarizing testimony from the administrative hearing, the ALJ noted Plaintiff's mother stated Plaintiff had been prescribed an assistive device. (R. at 18.) However, because the ALJ's analysis is centered around his statement that the medical records contain "no indication an assistive device was ever recommended or prescribed by a doctor," (R. at 19), the Court concludes he either disregarded the records and testimony he had previously summarized or was unaware the treatment notes from March 20, 2017 actually contained a prescription. In any event, the ALJ's treatment of the wheelchair prescription is at best inconsistent.

a mistake in this regard and instead corrects the ALJ's misstatement of the record without comment. (Dkt. No. 11 at 8 (summarizing ALJ's analysis and stating "Plaintiff was observed moving from the examination table without difficulty").)

### B. Because It Is Conceivable The ALJ Would Have Found Plaintiff To Have Greater Limitations Without The Factual Errors Associated With Plaintiff's Wheelchair Use And Prescription, The Court Does Not Find His Errors Harmless.

Because "[p]rocedural perfection in administrative proceedings is not required," *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988), "a mistake in an ALJ's decision does not automatically render the entire decision unsupported by substantial evidence." *Botsay v. Colvin*, 658 F. App'x 715, 718 (5th Cir. 2016). Instead, "the Fifth Circuit has applied the harmless error standard where the ALJ misstated the medical evidence." *Robinson v. Colvin*, No. 14-CV-1530, 2015 WL 5725134, at *8 (E.D. La. Sept. 28, 2015) (citing *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010)); *see Jones v. Saul*, No. 19-CV-880, 2020 WL 5752390, at *18 (N.D. Tex. Aug. 24, 2020) (applying harmless error standard to factual errors made in the RFC analysis), *report and recommendation adopted*, 2020 WL 5747873 (Sept. 25, 2020). "[H]armless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Jones*, 2020 WL 5752390, at *18; *see Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

Here, the significance of the ALJ's factual errors and their impact on the RFC findings is not completely clear. On one hand, even if the ALJ had understood that Plaintiff had been prescribed a wheelchair, a wheelchair prescription does not necessitate a certain RFC determination, especially when given at the plaintiff's request. *Cf. Moles v. Berryhill*, No. 15-CV-2143, 2017 WL 2225577, at *10 (D. Or. May 22, 2017) (affirming RFC determination that plaintiff could perform light sedentary work without an assistive device when plaintiff received prescription

for a cane because she was worried about falling at her son's wedding). Furthermore, the ALJ found—and Plaintiff does not dispute—that the physical examinations of record ranged from unremarkable to mild and moderate. *See Jones*, 2020 WL 5752390, at *18 (finding ALJ's misstatements in frequency of plaintiff's symptoms harmless when other evidence supported the physical RFC determination); *Chairez v. Astrue*, No. 09-CV-152, 2010 WL 2143656, at *4 (N.D. Tex. Apr. 28, 2010) (finding prescription for cane would not have changed credibility analysis and RFC determination when the record contained normal test results), *report and recommendation adopted*, 2010 WL 2143655 (May 26, 2010); *Robertson v. U.S. Comm'r Soc. Sec. Admin.*, No. 08-CV-150, 2009 WL 249699, at *3 (W.D. La. Feb. 2, 2009) (finding medical reports supporting RFC determination made up for factual mistakes committed by the ALJ).

On the other hand, the Court "cannot ignore or disregard statements made by the ALJ in support of the decision," as "[t]he decision itself is the only insight [it has] into the ALJ's decision making process[.]" *Smith v. Colvin*, No. 14-CV-195, 2016 WL 762693, at *9 (N.D. Miss. Feb. 25, 2016) (quotations omitted). The misconception that Plaintiff was never prescribed a wheelchair and that she could move from her wheelchair to the examination table without difficulty[10] appear—from the decision itself—to be central to the ALJ's credibility findings and, in turn, to the RFC determination. (*See* R. at 19 (framing the wheelchair explanation with statements regarding Plaintiff's credibility as to the severity of her symptoms).) Courts consistently find such factual errors require remand. *See Moreno v. Berryhill*, No. 17-CV-2164, 2018 WL 4658503, at *8 (S.D. Tex. Sept. 6, 2018) ("[The ALJ's] erroneous factual recitation lies at the heart of a number of

---

[10] While this error might appear minor, the Court cannot say it is insignificant. A person may be able to move from an examination table to a wheelchair more easily than from a wheelchair to an examination table, depending on factors such as the height of the table.

the ALJ's credibility assessments and factual findings, and may have led to an erroneous RFC determination. Because the ALJ made an erroneous finding of fact that he then used as a central component of his evidentiary analysis, the court cannot conclude that the ALJ's decision is based on substantial evidence.") (citations omitted), *report and recommendation adopted*, 2018 WL 4658215 (Sept. 26, 2018); *Martin v. Astrue*, No. 08-CV-366, 2010 WL 881740, at *6 (M.D. La. Mar. 5, 2010) ("The ALJ's decision must be reversed and remanded because, at its heart, the ALJ's decision is based on a misinterpretation of the medical evidence. This misinterpretation then affected the credibility findings, which in turn affected the determination of the RFC.").[11]

Commissioner cites *Kashanchi v. Saul* for the proposition that the ALJ was not bound by Plaintiff's choice to use a wheelchair. (Dkt. No. 12 at 3-4.) In *Kashanchi*, the court found the ALJ's decision plaintiff did not meet Listing 1.02 for disfunction of a major joint was supported by substantial evidence. *Kashanchi v. Saul*, No. 19-CV-310, 2020 WL 5823154, at *14-16 (S.D. Tex. Sept. 11, 2020), *report and recommendation adopted*, 2020 WL 5819898 (Sept. 30, 2020). In doing so, the court found plaintiff did not demonstrate the "inability to ambulate effectively"— one of the necessary requirements to meet the listing—even though she frequently used two crutches or a walker to assist in her ambulation. *Id.* at *15-16. The court reasoned that plaintiff had also been documented using a cane or a walker that was never prescribed by a doctor and was seen

---

[11] *See also Hendershot v. Comm'r of Soc. Sec.*, No. 17-CV-413, 2018 WL 4292153, at *10-11 (S.D. Ohio Sept. 10, 2018) (finding the ALJ's misstatements as to plaintiff's gait and use of wheelchair, among other errors, prevented the court from "conducting a meaningful review and deprive[d] the ALJ's credibility and RFC assessment of substantial evidence"); *Jones v. Berryhill*, No. 17-CV-5324, 2018 WL 1325851, at *14-17 (E.D. La. Feb. 23, 2018) (finding RFC determination not supported by substantial evidence due, in part, to incorrect factual findings that impacted the analysis of Plaintiff's credibility and subjective complaints), *report and recommendation adopted*, 2018 WL 1287637 (Mar. 13, 2018).

walking without restrictions at one of her medical appointments. *Id.* at *16. Plaintiff, therefore, did not meet the listing definition for "inability to ambulate effectively." *Id.*

The Court finds *Kashanchi* distinguishable from this case. First, the court in *Kashanchi* analyzed whether plaintiff met the listing requirements at Step Three, whereas here Plaintiff challenges the ALJ's RFC determination. The listing requirements are intended to recognize that "certain impairments are so severe that they prevent a person from pursuing any gainful work," *Heckler v. Campbell*, 461 U.S. 458, 460 (1983), and "[t]he criteria in the medical listings are 'demanding and stringent.'" *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). In order to meet the Listing 1.02 requirements, the plaintiff in *Kashanchi* had to be unable to ambulate effectively, *i.e.* unable to "walk without the use of a walker, two crutches, or two canes." *Kashanchi*, 2020 WL 5823154, at *15 (quotations omitted). The ALJ here was not required to determine whether Plaintiff could ambulate effectively as outlined in Listing 1.02, and Commissioner has made no attempt to explain why the analysis of a listing should apply to an RFC determination.

Second, there was no factual error in *Kashanchi* as to whether plaintiff had been prescribed an assistive device; plaintiff there *chose* to use a walker that had not been prescribed by a doctor. *Id.* at *16 ("The ALJ was not bound by Plaintiff's decision to use a walker even though it was not prescribed by a doctor."). In other words, unlike here, the court was not tasked with untangling a significant error from the ALJ's findings on plaintiff's ability to ambulate effectively. In fact, because the court in *Kashanchi* apparently would have treated the *choice* to use an assistive device differently from a *prescription* to use an assistive device, the case actually supports a finding that the ALJ's mistake here impacted his assessment of the evidence and should be considered in the Court's analysis.

Third, the court in *Kashanchi* found the medical record evidence supported the decision plaintiff did not meet Listing 1.02. *Id.* at *16. Here, the evidence relating to Plaintiff's knee and lower back is more significant. The ALJ found that several physical examinations indicated up to moderate symptoms.[12] An MRI of Plaintiff's spine on April 26, 2016 showed bilateral pars defect with anterolisthesis (stress fracture with abnormal alignment of bones) and mild degenerative changes. (R. at 367-368.) An MRI of Plaintiff's right knee on April 28, 2016 showed marginal osteophytes, edema of the suprapatellar fat pad, and Chondromalacia (cartilage deterioration) of the patella. (R. at 363-366.) Moreover, Plaintiff consistently attended appointments using either a wheelchair or cane, more recently using a wheelchair.[13] She also testified at the administrative hearing that she uses a cart or wheelchair any time she leaves her home and that she has trouble climbing stairs, bending, standing, kneeling, walking, squatting, sitting, reaching, and lifting. (R. at 42, 46; *see also* R. at 263 (Function Report stating that, on some days, Plaintiff cannot walk to the refrigerator to get food and that it takes her five to ten minutes to walk to the bathroom).)

---

[12] R. at 396-398 (3/28/2016) (noting joint pain in knee, spine, and neck; finding restriction in extension of spine, paraspinous muscle spasm, and increased tightness of the paraspinal muscles; and finding lateral knee tenderness and painful extension); R. at 393-395 (4/19/2016) (same); R. at 390-392 (5/5/2016) (same); R. at 386-389 (5/19/2016) (noting chronic joint pain in knee, spine, and neck); R. at 383-385 (6/21/2016) (same); R. at 507-509 (3/7/2017) (finding restriction in extension of spine, paraspinous muscle spasm, and increased tightness of the paraspinal muscles); R. at 491-495 (10/2/2017) (noting back pain, joint pain, joint stiffness, joint swelling, leg cramps, leg weakness, muscle pain, and muscle weakness).

[13] Of the twenty-two appointments in Plaintiff's medical records, at least fourteen document Plaintiff's use of a cane or wheelchair (R. at 341-343 (4/19/2016) (cane); R. at 390-392 (5/5/2016) (cane); R. at 386-388 (5/19/2016) (cane); R. at 383-385 (6/21/2016) (cane); R. at 426-432 (11/8/2016) (cane); R. at 420-422 (2/1/2017) (wheelchair); R. at 433-437 (2/17/2017) (wheelchair); R. at 417-419 (3/7/2017) (wheelchair); R. at 411-412 (5/1/2017) (wheelchair); R. at 521-525 (5/19/2017) (wheelchair); R. at 478-489 (6/29/2017) (wheelchair); R. at 498-499 (8/3/2017) (wheelchair); R. at 511-515 (8/24/2017) (wheelchair); R. at 491-495 (10/2/2017) (wheelchair).) The Court, therefore, disagrees with the ALJ's characterization of Plaintiff's cane and wheelchair use as "intermittent." (R. at 19.)

Given the evidence above, the Court is not convinced that the incorporation of a cane in the RFC is sufficient to accommodate all of Plaintiff's limitations or negate the ALJ's fundamental mistake as to Plaintiff's wheelchair use and prescription. It is certainly conceivable that the correct information could have impacted the ALJ's interpretation of Plaintiff's credibility, evidence of record, and the resulting RFC. *Cf. Rowe v. Colvin*, No. 16-CV-204, 2017 WL 3821473, at *8 (M.D. La. Aug. 31, 2017) (finding prescription for assistive device—or lack thereof—relevant to whether the credibility assessment and RFC determination was supported by substantial evidence); *Garcia v. Colvin*, No. 15-CV-36, 2016 U.S. Dist. LEXIS 15223, at *24-25 (S.D. Tex. Jan. 11, 2016) (same), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 14050 (Feb. 5, 2016); *see also Temple*, 2020 WL 6075644, at *5 (finding ALJ's failure to incorporate cane into RFC determination prejudicial); *Robinson*, 2015 WL 5725134, at *8-10 (finding ALJ's misstatement of evidence, including that plaintiff had not been prescribed psychiatric medication before a certain date, substantially affected plaintiff's rights).

Moreover, there are significant inconsistencies, or at least gaps in explanation, that may have been resolved in Plaintiff's favor without the mistakes described above. For example, it is unclear how Plaintiff, who must be able to use a cane to ambulate, can also walk or stand for *two hours* per day and can stoop, kneel, and crouch. The ALJ provides no explanation for this apparent discrepancy, and the Court cannot speculate as to how these findings should be reconciled. *See Banks v. Colvin*, No. 16-CV-769, 2018 WL 1528806, at *7-8 (M.D. La. Feb. 26, 2018) (finding the ALJ's determination that plaintiff must use a walker but can occasionally climb ramps, stairs, ladders, and scaffolds inconsistent and noting the court was deprived of meaningful review because the ALJ did not discuss the basis of his findings), *report and recommendation adopted*, 2018 WL 1528190 (Mar. 28, 2018). Similarly, the ALJ failed to explain why—having essentially

discredited Plaintiff's subjective complaints—he found Plaintiff must be able to use a cane in the first place. This finding is at odds with the ALJ's credibility determination that Plaintiff's symptoms were not as severe as alleged. *Cf. Vincent v. Colvin*, No. 15-CV-610, 2016 WL 5373031, at *7 (W.D. Okla. Sept. 26, 2016) ("[A]t issue here is whether Plaintiff can perform 'light work' with an additional sit-stand option. Without further explanation, the Court cannot agree that Plaintiff's lack of need or prescription for a wheelchair—but apparently accepted need and prescription for other assistive devices—constitutes substantial evidence in support of the ALJ's credibility assessment.").[14]

While it is true, as Commissioner points out, that the ALJ maintains the responsibility to assess credibility, resolve conflicts in evidence, and determine RFC, the Court finds the ALJ's errors in making these assessments too significant to be considered harmless. The RFC likely would have contained different limitations without these errors, requiring the ALJ to pose different hypothetical questions to the VE. *See Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (holding a disability determination cannot stand when it is based on a VE's answers to hypotheticals that do not include all of claimant's limitations).[15] Therefore, the Court finds the ALJ's decision is not supported by substantial evidence and recommends remanding the case for further evaluation.

---

[14] While Plaintiff did report on August 3, 2017 that her pain was reduced to 2/10 when treated with medication, she subsequently reported at an appointment on October 7, 2017 that medication only "help[ed] a little with the pain." (R. at 490, 498.) The Court, therefore, cannot say her chronic condition was controlled by medication. Moreover, pain is not the only reason Plaintiff may need a wheelchair—she reported nerve damage and loss of feeling in her feet. (R. at 279.) She even visited her physician on July 27, 2017 because her feet were turning blue. (R. at 472.)

[15] As a result, Plaintiff is not required to prove she cannot perform the jobs identified by the VE at Step Five, as Commissioner argues. Such an argument assumes the RFC determination was supported by substantial evidence and the resulting hypotheticals incorporated all of Plaintiff's limitations. In other words, it assumes Commissioner met *his* Step Five burden to show Plaintiff can perform work that exists in the national economy. *See Perez*, 415 F.3d at 461 ("The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner

## IV. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment (Dkt. No. 10) be **GRANTED**, Commissioner's Motion for Summary Judgment (Dkt. No. 11) be **DENIED**, and the case be **REMANDED** for further proceedings consistent with this Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on November 3, 2020.

_____
Sam S. Sheldon
United States Magistrate Judge

---

on the fifth step to show that the claimant can perform other substantial work in the national economy. *Once the Commissioner makes this showing*, the burden shifts back to the claimant to rebut this finding.") (quotations and citations omitted) (emphasis added).